PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2230

SHERITA K. HICKS,

        Plaintiff – Appellant,

  v.

ANNE ARUNDEL COUNTY; DETECTIVE GREGORY PAMER #1747,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Deborah Lynn Boardman, District Judge. (1:20–cv–00022–DLB)

Argued: March 22, 2024        Decided: August 6, 2024

Before NIEMEYER, KING, and BENJAMIN, Circuit Judges.

Affirmed by published opinion. Judge Benjamin wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:** Wanda Jean Dixon, THE DIXON LAW FIRM, LLC, Largo, Maryland, for Appellant. Thomas John Mitchell, ANNE ARUNDEL COUNTY OFFICE OF LAW, Annapolis, Maryland, for Appellees. **ON BRIEF:** Gregory J. Swain, County Attorney, ANNE ARUNDEL COUNTY OFFICE OF LAW, Annapolis, Maryland, for Appellees.

DEANDREA GIST BENJAMIN, Circuit Judge:

After a five-day trial, a jury found that Detective Gregory Pamer did not violate 42 U.S.C. § 1983, and related state law claims, when Pamer filed an arrest and search warrant that mistakenly identified Sherita Hicks as the perpetrator of an assault. Hicks appeals that judgment, contending that the district court improperly dismissed a juror, committed instructional errors, and failed to include Anne Arundel County ("the County") on the verdict sheet. Finding no reversible error, we affirm.

I.

A.

This lawsuit arises from Sherita Hicks' mistaken identification and unlawful arrest related to the assault of a non-party, Devante Allen. Gregory Pamer, a detective with the Anne Arundel County Police Department, led the assault investigation. Allen had been violently attacked by two men and a woman. During the investigation, Pamer showed Allen a photo lineup of several women that included a picture of Hicks. Allen incorrectly identified Hicks as the female assailant. As the investigation continued, Pamer learned that a video recording from the assault captured the assailants coming and going in a silver/grey van. The recording also depicted a female saying, "my house, you broke into my house." J.A. 0604, 0618. As it turns out, the silver/grey van used during the assault was registered to Hicks. Last, Pamer learned that the attack was retribution for a prior attempted theft and break-in at Hicks' home. Pamer developed Hicks as a suspect based on this information.

2

Pamer filed an application for statement of charges for an arrest and search warrant which stated under oath that Allen identified Hicks in a photo lineup. After he filed the application, Pamer received exculpatory information that implicated a woman other than Hicks as the female assailant from Allen's assault. Despite this information, Pamer arrested Hicks on January 19, 2017. She was incarcerated for one night before she posted bond and was released. A grand jury indicted Hicks on charges related to her alleged role in Allen's assault. The charges were later dismissed.

B.

Hicks filed a civil rights lawsuit under 42 U.S.C. § 1983 against the State of Maryland, Anne Arundel County, the Anne Arundel County Police Department, the Anne Arundel County Department of Detention Facilities, two Anne Arundel County Detectives, including Pamer, and two Maryland State's Attorneys. She alleged that detectives with the Anne Arundel Police Department, including Pamer, unlawfully arrested, detained, and maliciously prosecuted her for an assault she did not commit, in violation of her federal and state constitutional rights. She brought related state law claims for malicious prosecution and negligence, among other claims. She also alleged that the County was vicariously liable for Pamer's actions during the investigation that led to her unlawful arrest.

As relevant here, Hicks' case proceeded to trial against the County and Pamer on three counts. The claims consisted of the 42 U.S.C. § 1983 malicious prosecution claim, along with state malicious prosecution and gross negligence claims. The jury was tasked

3

with deciding whether Pamer intentionally and recklessly made false statements in the application for statement of charges.

C.

Following voir dire, the court sat nine jurors. It issued preliminary instructions about juror conduct throughout the course of the trial. The court instructed that the jurors "are not to discuss the case with anyone, including your fellow jurors, or to permit anyone to discuss" the case with the jurors. J.A. 048. The instruction further stated that the jurors could not "communicat[e] about the case or your service as jurors through electronic means such as your cell phone, email, texting, Twitter blogs, websites, chat rooms, social networking sites . . . all of that stuff." *Id*. The court made clear that the jury was "simply . . . not to talk about the case" until they "retire to the jury room at the end of the case to deliberate about [the] verdict." *Id*. The court also gave additional warnings to the jury. It stated, "[i]f anyone should try to approach you or talk to you about the case or if any information about the case is brought to your attention in any form . . . please do not discuss it with anyone . . . rather . . . write a note . . . and give it to the courtroom deputy . . . ." *Id*. at 048–49.

Hicks commenced her case-in-chief. The first day of trial, Hicks introduced audio interviews between her and Pamer after her arrest, and interviews between Pamer and Allen. After hearing the evidence, the court dismissed the jurors for a lunch recess. Hicks' counsel informed the court, ex parte, that during the lunch break, Juror Number Four encountered Hicks in the hallway and said, "I wish I could give you a hug." J.A. 054–55. In the presence of both parties, the court recapped what happened. The court recalled its

4

earlier instruction to the jury. It explained that although those instructions did not explicitly tell the jury not to speak directly to the lawyers or the parties, it "assumed that was implicit that they shouldn't communicate with the lawyers or the parties about the case." *Id.* at 056–57.

Defense counsel asked the court to question the juror on whether she could remain fair and impartial to hear all the evidence in the case because a hug appeared impartial on its face. The court decided that it would not individually question the juror but would admonish the jury. Defense counsel objected to this. Hicks' counsel agreed that the court's proposed course of action was appropriate. When the jury returned from break, the court reminded them, "not to speak to anyone about the case, including fellow jurors, including any lawyers, including any of the parties, the Plaintiff or the Defendant, or any potential witnesses." J.A. 060. It further cautioned, "[y]ou will see people walking in the hallway that you may recognize from the court, and you're not supposed to speak with them . . . remain open-minded until . . . after you hear all of the evidence." *Id.*

The trial continued. At the close of evidence, Defense counsel renewed objection to Juror Number Four. The court, "[u]pon reflection" expressed "concern[]"

> about this contact by a juror with . . . a party in this case . . . after I instructed . . . the whole jury - - first when I impaneled them on Thursday, and then again, 'I instruct you' - - I said at the trial that 'during the trial, you are not to discuss the case with anyone, including your fellow jurors or to permit anyone to discuss it with you.' I then said, 'You are simply not to talk about this case.' And she did that. She talked about the case with someone, with the Plaintiff, no less.

J.A. 0960–61. The court determined that it would strike Juror Number Four from the jury. Hicks' counsel objected because Juror Number Four "did not talk about the case." *Id.* at

5

0961–62.  Counsel also asked the court to interview the juror to see if she could remain fair and impartial.  The court overruled the objection.  It drew an inference that Juror Number Four reacted to what she heard in court and her statement to Hicks amounted to "talking to [Hicks] about the case."  *Id*. at 0962.  The court dismissed Juror Number Four from jury service.[1]

D.

The court conducted a jury charge conference with counsel.  The court reviewed its proposed jury instructions with respect to the 42 U.S.C. § 1983 malicious prosecution claim.  It asked counsel if there was any objection to the instruction defining "recklessness."  The court altered the model instruction to incorporate language from Fourth Circuit precedent on whether Pamer:

> deliberately or with reckless disregard for the truth made material false statements in the affidavit with the intent to make or with reckless disregard of whether they thereby made the affidavit misleading.  Reckless disregard can be evidenced by an officer acting with a high degree of awareness of those statements' probable falsity.

J.A. 0928–29.[2]  Hicks' counsel objected to the court's modified charge that "reckless disregard can be evidence[d] in this way," because it would confuse the jury and lead them to think reckless disregard could only be demonstrated in this one way.  *Id.* at 0929.  The court overruled the objection.

---

[1] The court did not seat an alternate after this.  At the beginning of trial, the court sat nine jurors, thus leaving eight jurors to deliberate after Juror Number Four was dismissed.

[2] The district court's modified charge on recklessness proposed adding language derived from *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 556 (4th Cir. 2017).

6

The court's proposed jury instructions also told the jury that Hicks asserted a theory of vicarious liability against the County for the actions of its employee, Pamer. Hicks' counsel objected because the special verdict sheet listed only Pamer as a Defendant, but not the County. The court overruled the objection because, in the event the jury returned an adverse verdict and damages award against Pamer, the County's liability and indemnification would not be an issue for the jury to decide.

The court charged the jury with instructions on the law that included its modified instruction on recklessness and Hicks' theory of vicarious liability against the County. J.A. 0976, 978. It also charged the jury on punitive damages and explained that the jury would consider awarding damages only if it first found Pamer liable. After the court charged the jury, Hicks' counsel objected to the punitive damages instruction. The court overruled the objection.

E.

The jury returned a verdict in favor of Pamer on all counts, and found no liability for the constitutional violations, malicious prosecution, or gross negligence. Hicks filed a motion for a new trial that raised several trial errors. She argued the court erroneously dismissed a juror for failing to follow court instructions, failed to include the County on the verdict sheet, and issued confusing instructions to the jury. The court denied the motion.

Hicks timely appealed the judgment and raised three issues. We have jurisdiction over the district court's final decision under 28 U.S.C. § 1291.

II.

We review a denial of a motion for a new trial under an abuse of discretion standard. *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994). "Absent a clear abuse of discretion, we shall not disturb this decision." *Id.* We have said "that this decision 'is not reviewable upon appeal, save in the most exceptional circumstances.' " *Id.* (citation omitted). This is so "because the district judge is in a position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match." *Id.* (internal quotation marks omitted). "In reviewing a grant or denial of a new trial, the crucial inquiry is 'whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair.' " *Id.*

III.

The case before us presents three assignments of error, and we begin with Hicks' claim the district court erroneously dismissed a juror at the close of evidence. Federal Rule of Civil Procedure 47(c) states that "[d]uring trial or deliberation, the court may excuse a juror for good cause." Fed. R. Civ. P. 47(c). The rule explains:

> [t]he court may in appropriate circumstances excuse a juror during the jury deliberations without causing a mistrial . . . misconduct that might occasion a mistrial [is an] example[] of [an] appropriate grounds for excusing a juror. It is not grounds for the dismissal of a juror that the juror refuses to join with fellow jurors in reaching a unanimous verdict.

8

Fed. R. Civ. P. 47 advisory committee's note to 1991 amendment.[3]  When reviewing a "district court's response to juror misconduct" under Rule 47(c), courts apply an abuse of discretion standard.  *United States v. Hodge*, 933 F.3d 468, 481 (5th Cir. 2019); *Bostick v. State Farm Mut. Auto. Ins. Co.*, 774 F. App'x 600, 604 (11th Cir. 2019) (applying the same).  While we have not defined what may constitute "good cause" for dismissal under this rule, the Fifth Circuit in *United States v. Hodge* offered helpful guidance.  933 F.3d at 481.  There, the court held there was good cause under Rule 47(c) to dismiss a juror where the district court found that the juror "failed to follow instructions, exhibited a lack of candor during questioning, and had engaged in threatening behavior towards other jurors."  *Id*.

Hicks argues that the district court erroneously removed Juror Number Four without first interviewing the juror on whether she could remain fair and impartial, or, in other words, based on its assumptions of the juror's views of the merits of Hicks' case.  To support her position, she relies on *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997) and *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987), both of which are criminal cases involving juror removal after jury deliberations began under Federal Rule of Criminal Procedure 23(b)(3).  But Hicks' reliance on these cases is misplaced, as they are distinguishable from the instant case.

---

[3] Federal Rule of Civil Procedure 48 also requires that "[a] jury must begin with at least 6 and no more than 12 members, and each juror must participate in the verdict unless excused."  Fed. R. Civ. P. 48(a).  "Unless the parties stipulate otherwise, the verdict must be unanimous and must be returned by a jury of at least 6 members."  Fed. R. Civ. P. 48(b).

9

Rule 23(b)(3) provides that "[a]fter the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict . . . if the court finds good cause to excuse a juror." Fed. R. Crim. P. 23(b)(3). The trial judge in *Brown* dismissed a juror who, during deliberations, was purportedly unwilling to follow the court's instructions on the law. *Brown*, 823 F.2d at 595. The D.C. Circuit disagreed. The record evidence revealed a question of whether the juror engaged in misconduct for failing to follow the court's instruction on the law, or whether the juror refused to join fellow jurors in reaching a unanimous verdict based on the sufficiency of the government's evidence. The latter is an impermissible cause for juror dismissal. The court set forth an exacting standard for when a court may remove a juror in a criminal case after deliberations have begun under Rule 23(b)(3). It held that if the record evidence discloses "a possibility that the juror believes the government has failed to present sufficient evidence to support a conviction," then the court must deny the request to dismiss the juror. *Id.* at 596–97.

The trial judge in *Thomas* dismissed a juror after determining that the juror had become a distraction, refused to apply the law as set out in the court's instructions, and ignored evidence in favor of the juror's own preconceived notions about the case. *Thomas*, 116 F.3d at 612–13. The Second Circuit held that the district court erred because the record evidence was not clear that the juror's position during deliberations was the result of his "defiant unwillingness to apply the law as opposed to reservations about the sufficiency of the [g]overnment's case against the defendants." *Id.* at 624. The court held that a juror may be dismissed for a refusal to follow the law as instructed, "only where the record is clear beyond doubt that the juror is not, in fact, simply unpersuaded by the prosecution's

10

case." *Id.* at 608. A juror may not be dismissed where the "record evidence raised the possibility that the juror's views on the merits of the case was motivated by doubts about the defendants' guilt," rather than an intent not to follow the court's instructions. *Id.* at 608–09.

*Brown* and *Thomas* are inapposite. It is undisputed that Juror Number Four was dismissed before jury deliberation began. Unlike in *Brown* and *Thomas*, the request to discharge Juror Number Four did not stem from the juror's view on the merits of the case. The record demonstrates that the underlying reason for dismissal is clear—Juror Number Four's conduct violated the spirit of the court's preliminary instructions not to speak with anyone about the case. With these principles in mind, we hold that a juror's failure to follow the court's instruction not to speak with anyone about the case constitutes good cause for removal under Rule 47(c). As such, the court did not abuse its discretion when it dismissed Juror Number Four.

IV.

Next, Hicks argues that the district court erroneously instructed the jury. We review jury instructions holistically and through an abuse of discretion standard. *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). The Supreme Court instructs that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Henderson v. Kibbe*, 431 U.S. 145, 152 n.10 (1977). We simply determine "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the

11

jury to the prejudice of the objecting party." *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) (citation omitted).

The party challenging the jury instructions faces a heavy burden, for "we accord the district court much discretion" to fashion the charge, and we "will not reverse provided that the instructions, taken as a whole, adequately state the controlling law." *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994). A district court will be reversed for declining to give a proffered jury instruction only when the instruction: "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired" that party's ability to make its case. *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (citation omitted).

Hicks argues the 42 U.S.C. § 1983 malicious prosecution jury instruction is misleading because it improperly limited the methods that could constitute reckless conduct by Pamer. We disagree. A § 1983 malicious prosecution claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citation omitted). To succeed, a plaintiff must show that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor." *Id.* A party challenging the veracity of a warrant application must show that the officers made "material false statements in the warrant application" either deliberately or with a "'reckless disregard for the truth,'" *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 556 (4th Cir.

12

2017) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)), or omitted from that application, "material facts with the intent to make, or with reckless disregard of whether they thereby made, the [application] misleading." *Humbert*, 866 F.3d at 556 (citation omitted).

Here, the jury only had to determine the second prong of the malicious prosecution claim. The jury had to decide whether Pamer violated Hicks' federal and state constitutional rights by intentionally or recklessly making a false statement in the application for statement of charges. The district court's charge on "recklessness" was a modified version of the Modern Federal Jury Instructions. The court added language specific to Pamer's alleged misconduct that explained that Hicks was required to show Pamer "deliberately or with a reckless disregard for the truth made *material false statements in the application for statement of charges or omitted from that application material facts*, with the intent to make or with reckless, disregard of whether he thereby made the application misleading." J.A. 0978 (emphasis added). The modified language comes directly from this court's binding precedent in *Humbert*, another case where the plaintiff was arrested pursuant to a warrant that was unsupported by probable cause because it misidentified the plaintiff. 866 F.3d at 556.

The remainder of the charge restated the language of a 42 U.S.C. § 1983 malicious prosecution claim as to "state of mind," "intent," and "recklessness," found in the Modern

13

Federal Jury Instructions verbatim.[4] *See* 5 L. Sand, J. Siffert, W. Loughlin, S. Reiss, & N. Batterman, Modern Federal Jury Instructions–Civil ¶ 87.03 § § 87-75–77 (2024). At the charge conference, Hicks merely asked the court to charge the model jury instruction. The court's modified instruction substantially incorporates the model instruction, and the instructions "construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Bailey*, 94 F.3d at 156. Accordingly, we conclude that the district court committed no reversible error with respect to its instructions to the jury.[5]

---

[4] *Compare* 5 L. Sand, J. Siffert, W. Loughlin, S. Reiss, & N. Batterman, Modern Federal Jury Instructions–Civil ¶ 87.03 § 87-75 ("To prove the second element of a malicious prosecution claim, the plaintiff must not only show the defendant's acts deprived the plaintiff of a federal right but also that the defendant performed those acts intentionally or recklessly, rather than accidentally."); *Id.* § 87-76 ("An act is intentional if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or other innocent reason."); *Id.* § 87-77 ("An act is reckless if done in conscious disregard of its known probable consequences. In other words, even if a defendant did not intentionally seek to deprive a plaintiff of the plaintiff's rights, if nevertheless he purposely disregarded the high probability that his actions would deprive the plaintiff of the plaintiff's rights, then the second essential element would be satisfied."), *with* J.A. 0977–98 (the recklessness jury instruction in the instant case).

[5] Hicks asserts two additional arguments. She first challenges the court's punitive damages instruction. Because the jury returned a verdict in favor of Pamer on all counts, and it found no liability, the jury never reached the question of punitive damages. Therefore, we need not address this issue. Hicks' last challenge relates to the district court's denial of her request to include the County on the verdict sheet. Because the jury returned a verdict in favor of Pamer and found no underlying liability, there is no predicate conduct for which the County could have been held liable as a matter of law. *Coit v. Nappi*, 239 A.3d 824, 835 (Md. Ct. Spec. App. 2020); Md. Code Ann., Cts. & Jud. Proc. § 5-302 (2023). We need not address these issues further.

V.

Finding no reversible error, the judgment of the district court is

*AFFIRMED*.